There's a second case of the afternoon called 2-12-07-507, People of the State of Illinois v. Myles Burton on behalf of Mr. Burton and Ms. Kim DeWitt, on behalf of the people, Mr. William R. Roberts. Thank you. May we proceed? Mr. DeWitt? I do want to indicate that Justice Shostak, due to an unavoidable conflict, was not able to be here today, but she will review the tape of these arguments before we render a decision. Ms. DeWitt, you may proceed. Good afternoon, Your Honors. May it please the Court, Counsel. Myles Burton was convicted of hate crime. We ask that Your Honors reduce the defendant's conviction to misdemeanor criminal damage to property because the evidence failed to prove the essential element that Mr. Burton was motivated by a racial bias when he scratched those words into the windowsill at Elmhurst College. Now, at issue here is not really Judge McAuliffe's factual findings, but his application of those facts to a very special and select and essential element of the hate crime statute that is motivated by racial bias. Judge McAuliffe said that the defendant was racially motivated because he wrote words that had racial connotations, obviously, and he knew the words would cause someone to be afraid or feel demeaned. But the fact that the words had racial connotations doesn't mean that the defendant had a racial bias. If that were the case, everything from satire to academic dissertations that are racially motivated would fall under the hate crime statute. But isn't that where we have to start with the words themselves? Yes, however, the case law is clear that you also look at the context, and context is everything. And Judge McAuliffe, in his findings, said, and this was the state's own evidence, the defendant said, the reason I did this is because my coach had accused me of being racist. That made me angry. I was drunk. I decided to show what a real racist would do, and I wrote these words. And Judge McAuliffe, both in finding the defendant guilty and at sentencing... Let me ask you this first. Let's assume that the defendant didn't testify in this case for a minute, and just the state's evidence was what was on that wall, and it was proven that he wrote what was on that wall. I mean, that would probably be enough, wouldn't it? Based on the mere words? If that's all there was, then it would be up to the trier of fact to draw reasonable inferences. From the words themselves? From the words themselves. So now we have the defendant testifying, and the court made some comments about his testimony. The defendant didn't testify in this case. I'm sorry, he didn't testify. He made a statement. Statements. And the court was making comments about his statements. Right. I mean, if the court didn't believe those statements, certainly the court would be free to not believe those statements and still find the defendant guilty, correct? Correct. But it's our position that the judge accepted those explanations because... Because, go ahead. Because in both when he found him guilty and at sentencing, he said, even though that might have been his motivation, that this is when he found him guilty, the fact of the matter is he wrote the words in question, he knew the words that he wrote would cause someone to be afraid or to feel demeaned. That was the jumping off point for the judge's application of the facts to the law. At sentencing, it's even clearer, he said, there isn't any question in my mind that he wrote these things. Even if he did it in the sense of saying, this is what a racist would say or do, they're still, you know, in my mind, racially motivated. The court said they were racially motivated. Then he went beyond that to say that it was a racially biased motive. And yet in the very next line at sentencing, the judge says, the question I struggle with a little bit is whether really Mr. Burton, deep down deep, has these feelings. I, and my gut feeling is, he does not. Now, in order to have a racially biased motive to commit a crime, to do this, you have to have a racial bias. And Judge Bacalus did not find that the defendant had a racial bias. And in the state's own brief, they do not dispute that Judge Bacalus accepted the defendant's explanation. What they argue in their brief is that they asked this court to step into Judge Bacalus's stead. And they say, well, one might left, a trier of fact might be left to wonder why he would have done this. That's not the standard. The factual finding, based on credibility findings by Judge Bacalus as to why the defendant did this, those are reserved to the trial court. They can only be reversed by this court. If this court finds it's manifestly erroneous. The state hasn't argued that that was manifestly erroneous. They're bound by the, this was the state's own evidence, too. The state is the one who put in the tape. The state is the one who put in, put Shavon Nolan on the stand and Mr. Ficker on the stand and say, absolutely, we did not know each other. I've never met him. I've never met her. I did not know that she lived there, that any African American lived there. The reason I did this was I was mad at my coach and I was drunk. Plus, in the defendant's tape statement, he said, I absolutely was not trying to get that kind of a reaction by writing these words from an African American person or anybody. And he said, it was a stupid thing to do and if I could have seen myself doing it, I would have punched myself. Aren't the court's comments contradictory, though? I mean, aren't they internally inconsistent, where the court says, even though that might have been his motivation, but then goes on to cite in Ray B.C., indicating that the court knows the law. And then says the issue here presented is whether the defendant's bias toward this, toward a particular group, motivated his criminal act. And then the court found that his bias motivated his criminal act. I believe what Judge Bacalus did and where his confusion came in is, Judge Bacalus, he confused knowledge of a consequence with motive. He said that the defendant knew that this would cause someone to be afraid. Knowledge of a consequence is different from motive. Motive is when you desire a consequence. And an example would be, if I use my snowblower after a snowstorm, I know I'm going to run gas out of the snowblower. But that's not my motive for running the snowblower. It's to clear the driveway. If I run it in the spring after, God help us, all the snow has melted, my motive is, I'm running the gas out to store it. Okay? Now, Judge Bacalus said that because the defendant knew that the effect of what these words would have on someone, that it meant they were, these words were, and the fact that they had a racial overtone, that that meant that the hate crime occurred. But you need, you don't just need a, you need a racially biased motive. Now, perhaps a very good example of this distinction is in this court's opinion in People v. Rokicki. At page 650, your honors looked at, when you were addressing the constitutionality of the hate crime statute, you looked at the ordinance in R.A.V., and there, all you needed for a bias-motivated crime was that the person, the defendant, put a swastika or a burning cross on someone's property and know that it would arouse anger, fear, alarm because of the racial connotations. That was struck down as unconstitutional. That's pretty much on all fours with what Judge Bacalus found, you know, what his reasoning was. In, immediately after that, in Rokicki, your honors looked at the Mitchell case. And in Mitchell, the defendant had to intentionally select his victim because of their race or other protected status. And that was upheld. Now, when Judge Bacalus, in his findings, said that even if that's, you know, why you did what you did, it's still racially motivated because you committed a crime, criminal damage. Well, that just means you committed the crime. And the racial nature of it and the effect on those who would see it. That's not sufficient. You know, in the judge's comments, the first part of it, he says that the evidence clearly establishes that he wrote these words, that he wrote them, he says, because he was angered by his coach. Right. Now, again, that doesn't mean that he's buying that. He just says that's what he says. And then, can you read, is it reasonable to read, in light of everything that he says, the next comment about, even though that might have been his motivation, as being in the same light, that basically the court is saying that he's saying this is what it was, but I don't necessarily buy it. Well, I'd like to make two points on that. I think you have to read, is it as clear as I would like it to be? No. However, you look at the findings at trial, you also look at what the judge said at sentencing, and saying, and repeating again, that even if that's the case, you know, the state challenged the credibility of that explanation in their closing arguments. If that argument had had any traction with Judge Bacallus, that would have been in his findings of fact. The findings of fact, though, were, he says this is why he did it. The judge then goes on to say, well, it's, he did the act, it's, that he wrote the words in question, that they would cause someone to be afraid or demeaned. Also, this court can't ignore the fact that Judge Bacallus did state at sentencing, I do not believe, in my gut, you do have this racial bias, these feelings. And again, if you don't have a racial bias, you can't have a racially biased motivation. Now, in NRA BC, the Supreme Court said the primary focus of the statute was intended to be directed towards biased motivation of the perpetrator, rather than towards the victim. This was a stupid thing to do. No one disputes that. He was drunk. No one disputes that. But to, but that doesn't mean, that doesn't convert his actions to hate crime from misdemeanor criminal damage when the evidence that the state put on is I did this because I was mad at my coach because he accused me of being racist and I was going to show what a racist would do. But there was no evidence adduced at trial, was there, that he told the coach or anyone told the coach that this had happened or that he let the coach know ahead of time or certainly afterwards that this had been done? Right. So, it takes away a little bit. Well, the fact that it wasn't a well thought out plan or well executed or that he didn't take pride in it afterwards or even try to, you know, show what had been done is attributable most likely to the fact that he was intoxicated. In fact, what, when he was giving his statement, the officer said to him, excuse me, said to him, you know, maybe when you get drunk, a different, you know, maybe a bias that you have comes out. And he said, absolutely not, absolutely not. But he did say, you know, he didn't even remember everything that he had written. And plus, this was not, this was a spur of the moment thing. The only reason he was at that dorm is after a party, after leaving the party and drinking, they went to that dorm looking for a student who was outside, hopefully smoking, so they could get a cigarette. So they're waiting around for a cigarette. Then he gets the bright idea to do this. Was there evidence that he knew who lived there? No, absolutely not, absolutely not. The state in its brief tries to make some allusion to that by pointing out that the defendant, when he's questioned, says, the cop says, the police officer says, well, do you know her? And did you know an African-American lived there? And the defendant says, there aren't that many African-Americans on campus, so I probably have seen her. That is saying I've seen an African-American woman on campus. But other than that, there's absolutely, Siobhan Nolan said she never met him. The defendant said he'd never met her. Mr. Ficker said he didn't know her. And she had only moved, she was 28 years old. She was an RA for that dorm. The defendant lived off campus, and she had only moved in like two and a half months before. So he said when he lived in that dorm, the RA was a white male named Tony. I don't know if there's any proof that the racial motivation was against this one woman, though. I mean, I don't know that anybody bought that. I don't think the judge bought that. I mean, I think it was really just whether the words themselves would show racial bias or motivation. Right. If there are no other questions, thank you. We will have time for rebuttal. Mr. Roberts, you may proceed. May it please the court, counsel, my name is Bill Roberts. I'm here on behalf of the people of the state of Illinois in the matter of the people versus Miles Burton. And I'm trying to get some clarity as to where to start. So let me start with the sufficiency of the evidence in this matter. And let me just, for the record, state that this intoxication notion wasn't a defense in terms of voluntary intoxication. Not a defense. Any intoxication was way before or at trial. So there's really nothing to talk about there. The sufficiency of the evidence, then, goes to what Judge McCallis said in the record. And that was, as has been alluded to, Burton wrote those words because Burton says he was angered at his coach who thought he was a racist. And that he was going to show his coach, engage in conduct, what a racist would do. Judge McCallis also said that even though that anger at his coach might have been Burton's motivation for doing what he did, the fact of the matter is, again, Judge McCallis, he wrote the words in question. That he knew that those words he wrote would cause someone to be afraid to be feel demeaned on page 180 of the record. Judge McCallis also said that the people have to prove it was bias motivated. I think the evidence is sufficient to establish that. And finally, in sentencing, Judge McCallis, consistent with his trial court ruling, said in that there isn't any question in my mind these things, even if he did it in the sense of saying this is what a racist would do or would say or do, they still are, in my mind, racially motivated. The court's not required to accept Mr. Burton's explanation for what it is that he did. The trier effect, not required to accept those explanations at trial. The trier effect in People v. Johnson, 267 ILF 3rd 526, didn't accept the explanation that the defendant wasn't chasing his victim because he didn't want to see anybody get hurt. The element in this case is racial motivation. It is. And the judge's comment that if a person writes something knowing someone would be afraid or knowing someone would be demeaned, that doesn't really have anything to do with racial bias or motivation, does it? I mean, it seems like, again, you have to read this whole statement in context, I guess, to say, you know, even if that was his motivation for doing it, Again, I'm theoretically buying this guy's story. The fact that the judge says he wrote it, he knew someone would be afraid and demeaned, I mean, that isn't enough. That's his story. But I think if we look at the circumstantial evidence that was introduced at trial and the reasonable inferences that flow from that circumstantial evidence, there's more than enough evidence here to demonstrate that this was racially biased. And this was the motivation for criminally damaging that property, which then meets the elements of the hate crime statute. What's the other evidence that you say supports that? Yes, Your Honor. I would point to Mr. Burton admitted that he knew the reaction to what he wrote would make people really, really scared. Mr. Burton admitted he knew the words he wrote would cause someone to feel afraid, to feel demeaned. But Judge Burke just pointed out that that's not sufficient to show racial motivation necessarily. But again, I think if you take this in the entire context, and that's what we're talking about, is placing these cases in context. Okay, go ahead. Which was the problem in some of the other free speech cases. There was no context. Here we take those pieces of evidence, the evidence that Mr. Burton admitted he thought the word Negro was derogatory, the evidence that Mr. Burton admitted he knew that KKK stood for Klux Klan, and admitted he knew that KKK is really bad. Mr. Burton admitted that an African American would be upset by what he wrote. Mr. Burton admitted he didn't tell his coach he was going to engage in this conduct in order to show his coach what a real racist would do. He admitted that Fricker, who testified in trial, and McMurdy, his other basketball team teammate, didn't know he intended to write anything on the windowsill. And that's consistent with what Mr. Fricker testified to, that there was never any plan for the three of them to somehow go over and make this demonstration as to showing a coach what a real racist would do. And by the way, Mr. Burton had admitted that he saw Ms. Nolan on campus, and coincidentally, she's the one whose windowsill was damaged. And beyond those admissions, Judge McAllis had additional circumstantial evidence to consider, and from which he could draw reasonable inferences. For example, again, this just happens to be discovered on the windowsill of an African American woman, one of the few on campus, small campus. And the crime's committed at night, in an area that's lit by, quote, an orange tinge that makes it kind of dark so it's not illuminated in any way that anyone would, it would jump out and see it. This is done at night, under the cover of darkness. This is not some demonstration as to what a racist would do to prove his coach wrong, that he's not a racist. This is a biased, motivated, criminal damage to property, which again fits the elements of a hate crime statute. Do you agree if Judge McAllis made a factual finding that he believed the statement of the defendant, that the reason he did it was because of his coach, that the defendant should have been found not guilty? If Judge McAllis made that finding? Hypothetically, I suppose, Your Honor, but he didn't make that finding. But he did say in sentencing that he did not find the defendant had racially biased feelings, correct? I believe he said in sentencing, just a moment, Your Honor. I don't have the exact words in front of me. I was paraphrasing counsel's summary of that in the record. Sure, Judge McAllis was consistent in sentencing and that he said, quote, there isn't any question in my mind these things, even if he did it in the sense of saying this is what a racist would do, would say or do, that they are still in my mind racially motivated. No, but what about the statement she pulled from the record indicating that Judge McAllis said he didn't think that the defendant had racially biased feelings? It's in R212-213. The judge said the question was whether the defendant really felt that way, and the judge said, quote, my gut feeling is that he does not, end quote. I would simply submit to the court that the circumstantial evidence is such that the net result of Mr. Burton's actions were driven by a racial bias. We look at all the evidence, take from that evidence, all the reasonable inferences therefrom, and I don't think there's any dispute whatsoever that this crime was driven by a racial bias, directed towards an African American, specific references to something that's so ingrained in this country, the Ku Klux Klan, that there's no other conclusion to draw. When you say directed towards an African American, what are you referring to? I'm referring to... The words or the fact that it happened to be written on the windowsill of someone who had moved into that room who was African American? I'm not sure that it's necessary that that individual victim be identified consistent with the case law, Your Honor. Okay, that's why I asked what you were referring to. And I apologize if I didn't quite understand where you were going with that. It's not necessary, although there is some evidence that he was aware that this woman was on campus, it's not necessary that these acts, this crime, be specifically directed to that particular victim. Case law is clear on this, that the individual victim need not be identified, and that's the whole point of this hate crime statute, Your Honors, is that this sort of activity, this sort of criminal behavior is such an antithesis to what it is that we stand for here, that it's not necessary, nor is the state's burden of proof heightened by trying to point to a specific victim in these matters. But you said it was directed towards an African American. I was trying to find out what you were referring to. Are you getting that from the words that were used or something else that you've referred to today? The words that were used? The fact that it was Ku Klux Klan. What were you referring to when you made that statement a minute or two ago? That these were racially motivated? That these words were directed at an African American. Well, the words themselves, Negro, We Hate Blacks, and KKK, again, I think is one of those givens in American life that when KKK is used, we all know what's being talked about. Again, another reasonable inference that can be drawn from these words, proving that these words, this crime, was in fact bias motivated. Thank you. Ms. McLaughlin, Ms. DeWitt. The definition of satire is the use of ridicule or exaggeration to expose another person's stupidity or vices. Now, I'm not saying that the defendant's coach was stupid. I'm saying that at the time that the defendant wrote these words, yeah, he exaggerated the accusation of racism that the coach had made towards him by writing what a real racist would do. He was ridiculing his coach. If words alone were enough to convict a person of hate crime, there would be everyone from late night comics to academic professors who would be guilty. Well, words alone are enough, depending on the medium. If, in fact, you are standing on making a public speech and you're saying these things, well, you're probably protected. Or if you're writing them and you show them to somebody else, you're probably protected. But when you scratch them into somebody else's window, then you've committed criminal damage to property. Then the issue is whether they're racially motivated. Right. If you have a racial bias and you commit a crime, that's hate crime. If you have a racial bias, it doesn't motivate your commission of a crime, then you've just done the underlying crime. If you don't have a racial bias and you commit a criminal damage to property, you've done criminal damage to property, even if the words themselves have racial connotations. And the state is repeatedly talking about reasonable inferences can be drawn. But Judge McAuliffe made findings of fact. Those can only be reversed if they're manifestly erroneous. The state can't make the same arguments, a closing argument below, to this court and say, you know, a reasonable trial of fact, rational trial of fact, might be left to wonder why he did this. Well, Judge McAuliffe found why he did it. And he said, I don't, my gut feeling is you don't have a racial bias. Where Judge McAuliffe went off the rail just enough that put us here is he said he equated racial motivation for writing the words with a racially biased motivation. And maybe it's because the statute says by reason of a person's race, whereas the case law, First Amendment case law, says it has to be bias motivated. It can't, it can't be, you know, by reason maybe is a little vague. Bias motivation isn't. You know, and the state, when a person holds a racial bias or another bias, it's usually pretty clear and people versus real kicky. The defendant went on a homophobic rant in a pizza hut because he just he thought a homosexual was touching his foot. He was pounding on the, he not only did that, he went to the St. Charles Pizza Hut to report to a manager that a homosexual was touching his foot. He then went to the police. In people versus nits, the defendant had a repeated pattern of racist attacks on his neighbor. He stood by while his children threw things at her and he said he was going to get her and he spit on her. It's pretty clear. There's a bias and and they act on that bias. OK, there's a connection there. There is no connection here because there is no bias. There's criminal damage to property. And I just want to emphasize that it's misdemeanor, criminal damage to property. That's the only predicate criminal damage listed for hate crime. So even though this occurred on the grounds of a college that if it had been separately charged. Could have been elevated to a felony. It wasn't separately charged and the hate crime statute is specific and saying it's only misdemeanor criminal damage to property. There are no other questions. Thank you. I would like to thank the attorneys for the recommendations today. The case will be taken under advisement.